IN THE UNITED STATES DISTRICT COURT OF MARYLAND
SOUTHERN DIVISION

**DORN B. HOLLAND**
**247 8th Street N.E. #101**
**Washington, D.C. 20002**

    **Plaintiff,**                                        **CIVIL NO.:**

**V.**

**WASHINGTON HOMES, INC./**
**K. HOVNANIAN COMPANY**
**1802 Brightseat Road**
**Landover, Maryland 20785**

    **Defendant**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**
UNDER TITLE VII OF THE CIVIL RIGHTS ACT
**AND DEMAND FOR JURY TRIAL**

Dorn B. Holland, plaintiff, by Edward Smith, Jr., his attorney alleges:

1. Plaintiff is an African-American male whose address is 247 8th Street, N.E. #101, Washington, D.C. 20002.

2. Defendant is a corporation doing business in Maryland with its principal place of business being 1802 Brightseat Road, Landover, Maryland 20785.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 (a) (4) and 42 U.S.C. § 2000 e-5 (f). This is a suit in both law and equity authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 and 1991

1

as amended. Jurisdiction of this Court is invoked to secure the protection of and redress the deprivation of rights secured by 42 U.S.C. § 2000 e et seq. providing for injunctive and other relief against racial discrimination in employment, and all statutory conditions precedent to this action, which have occurred.

4. At all relevant times Defendant was and is an "employer" as defined in Section 701 (b) of Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. § 2000 e (b) as amended.

5. On or about October 31, 1998, plaintiff was employed by defendant as a community sales manager.

6. From that date until February 2001 plaintiff was assigned by defendant to Fairfield Commons to sell real estate (residential property). Prior to his assignment several other sales people were unable to sell the properties due to the nature of the area (crime, minorities, and location). Other whites with the same status as the plaintiff were not assigned to Fairfield, but to more lucrative areas where the commissions and working conditions were better. Despite the disparate treatment by the defendant, plaintiff sold 89 of the 91 homes in Fairfield Commons becoming the "Rookie of the Year" in 1999.

7. In early March of 2000 plaintiff had a meeting with the Maryland Division Sales Manager of the defendant, Dorothy Peck (white female). Ms. Peck

acting for the defendant hired Joseph Macco a white male from the defendant's north division to the south division.  During the meeting plaintiff complained that Ms. Peck was allowing Macco to raid his customers under contract despite the fact that defendant assigned the area to him and another African American female.  Peck disputed the plaintiff's factual claims and allowed Macco to split commissions with the plaintiff on his prospective purchasers.  When plaintiff requested the same privilege for the exact reversed circumstances, Peck denied his claim for split commissions from Macco and Cliff Martin.  Peck reassigned plaintiff to a location called Winterset, but refused to allow him to install a lock box on the two (2) remaining homes in the Fairfield Commons location, in order to allow him commission on the sales.  However, she allowed Macco a white male this opportunity at Penn Place-Suitland when she reassigned him to Kingsview Single Family Homes in Charles County, Maryland.  This transfer by Peck for Macco was a better location and afforded him an opportunity to make higher commissions.  It was not offered to the plaintiff, nor was he assigned due to his race.  The defendant maintained a system of providing white sales managers assignments in premium locations.  The defendant created programs for the communities given to white sales managers to effectuate an accelerated sales pace and higher commissions,

thereby deliberately depressing the earnings of the plaintiff and diminishing his sales status.

8. From February 2001 until May 2001 Peck assigned plaintiff to Winterset into a community to which she knew has substantially less earning potential than the assignment of white agents similarly situated to the plaintiff. During this time Ms. Peck increased the sales prices at Winterset by $40,000.00 despite the defendant's promotional discount campaign in order to drive the plaintiff's commissions down and make him quit in retaliation for questing Peck's decision regarding Macco and his previous request for more lucrative areas as his white counterparts received. Additionally, whites were given more incentives for sales and given opportunities to sell lots at random, unlike the plaintiff, who is African American.

9. During June 2001 Peck gave a directive to the sales force of the defendant to report to newly assigned communities. Plaintiff was assigned to Arbor West, a sell out community with seven (7) remaining homes and extremely low earning potential. Plaintiff was to report to Arbor West, but due to the refusal of Cliff Martin (white male) to leave this location for Perrywood. Plaintiff requested the hugely lucrative Perrywood assignment and Peck denied the plaintiff the opportunity to report to either Arbor West, or

immediately to Perrywood due to his race and the preference shown to white sales managers by the defendant.

10. In November 2001 the defendant offered a free incentive trip for those sales persons who sold the target number of homes. Plaintiff exceeded the sales by two (2). He was denied the trip while unqualified whites were permitted to attend by the defendant.

11. Plaintiff was allowed to complete a course given by the National Association of Home Builders in April 2002. Pat Scherer registered the plaintiff when Peck refused to do so. After his successful completion of the class, Peck refused to allow him to put the CSP designation on his business cards, which would enhance his ability to make income and required a certificate of completion. She did not make the same request of whites in the defendant's company.

12. During September 2003 plaintiff went to the Director of Human Resources of the defendant, Edward Kaplan. He detailed the disparate treatment he was receiving from Peck, in which Macco, Martin (white males) Poole and James (white females) received lucrative sales communities while he was not assigned, passed over or received low selling minority areas. Peck had also been scrutinized for her treatment of an African American female, Kim Bredell who was terminated after seeking sales parity from the defendant.

13. After the HR meeting the plaintiff was referred to Ms. Peck and Ms. Leftrict, the Human Resources Manager.  During the meeting Peck became upset when confronted with plaintiff's allegations of discrimination, but agreed to meet with him on September 10, 2003 as Leftrict recommended. Thereafter Peck informed plaintiff that she was not comfortable with him and justified her prior conduct without adhering to the recommended and agreed upon course in the meeting with Leftrict.

14. Acting on Leftrict's advice, plaintiff met with Division President Hugo Decesaris on September 16, 2003.

15. During the meeting with DeCesaris, plaintiff inquired as to his community assignment.  He was passed over for the Winshire Estates assignment (covertly assigned to Joseph Macco by Peck) and a substantially more lucrative community than Hamlin Park.  He was told by DeCesaris that the decision of Peck would not be changed because plaintiff knows the people in his assigned area and a male was needed there.  The Winshire Estates opportunity was never available to him and nothing else was available.

16. Plaintiff was moved to another location with little or nothing to do and continued with his complaint to Human Resources (Ms. Leftrict). Thereafter, the plaintiff was transferred to another location at his work site

and another manager Ms. Arndt, but later withdrawn when Peck contacted Arndt.

17. On October 28, 2003, the plaintiff went to the HR office to view and copy his personnel file. At that time he was instructed by Ms. Leftrict to schedule a meeting in which she set-up the date and time (October 30, 2003 at 9:30 a.m.). On October 30, 2003 the plaintiff reported to the HR office to view and copy his personnel file. He was informed that he was terminated immediately for making violent threats against his manager, Ms. Peck to several employees. Plaintiff denied in the meeting that he ever threatened Ms. Peck. The HR manager Ms. Leftrict conducted the investigation and termination meeting. Plaintiff made no such threats, but was fired in retaliation for asserting his rights to receive fair treatment in the work place.

18. Thereafter the defendant changed the termination date to November 3, 2003. However the plaintiff was informed in an interview requested by the Maryland Department of Labor, Licensing and Regulation the defendant informed the agency that he was not discharged but laid-off due to lack of work with no possibility of returning.

19. The plaintiff was fired not for job performance, or cause, but because of his race in violation of Title VII.

20. The actions of the defendant and its agents as set forth was knowing malicious, intentional and reckless and calculated to violate the rights of the plaintiff solely because of his race in violation of Title VII.

21. The reason the plaintiff was denied the benefits that whites received by the defendant, including lucrative commissions, advancement, incentives and training that white persons received was due to his race and the application of institutionalized policy by the defendant, which violates Title VII.

22. Plaintiff filed a timely charge of discrimination with the appropriate state fair employment practice agency.

23. Plaintiff filed a timely written charge of race discrimination with the United States Equal Employment Opportunity Commission. (EEOC)

24. Plaintiff received a Notice of Right To Sue from the EEOC.

25. The complaint in this matter was filed with this court within 90 days from the receipt of the Notice of Right to sue.

26. The proper venue of this action is in this court as the Defendant does business in this State and district and the acts complained of took place herein.

WHEREFORE, plaintiff, respectfully invokes the powers of this court provided in Title VII 42 U.S.C. et seq. as amended and prays for the following:

a. Defendant be permanently enjoined from discriminating against the Plaintiff on any basis forbidden by Title VII.

b. Defendant be order to reemploy the Plaintiff into a position substantially similar to the one for which he was fired with full salary, seniority and benefits.

c. Defendant compensate, reimburse and make whole the Plaintiff for all past commissions he would have made but for the illegal conduct of the defendant under Title VII.

d. Defendant be ordered to pay compensatory and punitive damages for its conduct as alleged herein as a jury may order.

e. The court grants such additional equitable relief as is proper and just.

f. Plaintiff pray the court award the costs and expenses of this action and award reasonable attorney fees as provided by Title VII 42 U.S.C. § 2000 e-5 (k) as amended.

_____
Edward Smith, Jr., Esquire
2225 St. Paul Street
Baltimore, Maryland 21218
(410) 366-0494

_____
DORN B. HOLLAND

**IN THE UNITED STATES DISTRICT COURT OF MARYLAND
SOUTHERN DIVISION**

**DORN B. HOLLAND**
**247 8th Street N.E. #101**
**Washington, D.C. 20002**

      **Plaintiff,**           **CIVIL NO.:**

**V.**

**WASHINGTON HOMES, INC./**
**a K. HOVNANIAN COMPANY**
**1802 Brightseat Road**
Landover, Maryland 20785

      Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>PRAYER FOR JURY TRIAL</u>**

Mr./Ms. Clerk:

    Please set this case in for trial by jury on all issues, which merit a jury's consideration under Title VII, as amended.

 

                                        _____
                                        Edward Smith, Jr., Esquire
                                        2225 St. Paul Street
                                        Baltimore, Maryland 21218
                                        (410) 366-0494